IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CT-3138-FL

| | | |
|---|---|---|
| CHRISTOPHER NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RN TERESA CARTER, P.A. ERICA | ) | |
| KEARNEY, NURSE CORA MADDOX, | ) | |
| and WARDEN DAVID MAY, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants Teresa Carter ("Carter"), Cora Maddox ("Maddox"), and David May's ("May") (collectively, "state defendants") motion to dismiss (DE 20) pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the court are defendant Erica Kearney's ("Kearney") motions to dismiss (DE 24) and to strike plaintiff's second response thereto (37), and plaintiff's motions to appoint medical expert (39) and to strike portions of defendant Kearney's memorandum filed in support of her motion to dismiss (DE 43). The issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se and in forma pauperis, commenced this action by filing complaint asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff filed his first amended complaint as of right June 4, 2024, and supplemental complaint September 11, 2024 (together, the "operative complaints"). Therein, plaintiff alleges defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment,

and related state law claims for medical negligence. Defendants Kearney, Carter, and Maddox are medical professionals who worked at the Eastern Correctional Center ("E.C.I.") during the relevant time period. Defendant Kearney is a physician's assistant, defendant Maddox is a medical administrator responsible for scheduling outside medical appointments, and defendant Carter is a registered nurse. Defendant May was the warden of E.C.I. during the same time period. As relief, plaintiff seeks compensatory and punitive damages, and injunction directing defendants to provide further medical care.

State defendants filed the instant motion to dismiss, arguing that plaintiff cannot proceed in this action due to the "three strikes" rule in the Prison Litigation Reform Act ("PLRA"). Defendant Kearney filed separate motion to dismiss, arguing plaintiff fails to allege sufficient facts to state claims for relief against her, that she is entitled to qualified immunity, that the state law claims are barred under North Carolina law, and presenting the same PLRA three strikes argument as the state defendants. Plaintiff filed two responses in opposition to defendant Kearney's motion to dismiss, and defendant Kearney's filed the instant motion to strike the second response as procedurally deficient. In addition, plaintiff moves to appoint independent medical expert to assist the court, and to strike portions of defendant Kearney's memorandum in support of the motion to dismiss. Defendants replied in opposition to these motions.

**STATEMENT OF FACTS**

The facts alleged in the operative complaints, as pertinent to the instant motions, may be summarized as follows. Plaintiff's initial medical exams conducted after he entered custody showed "general good health." (Compl. (DE 7) at 5).[1] But in May 2020, plaintiff began to

---

[1] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for

2

experience severe abdominal pain, nausea, and vomiting. (Id.). Prison medical staff evaluated plaintiff but initially they did not detect any significant medical issues. (See id.).

Plaintiff was transferred to the E.C.I. in April 2022. In May 2023, plaintiff informed defendant Carter that he was again experiencing abdominal pain, nausea, and vomiting, but she failed to refer plaintiff for additional testing or for appointment with a more advanced medical provider. (See id. at 6–8). On September 29, 2023, plaintiff saw defendant Kearney and complained of stomach pain and jaundice. (Id. at 10). He requested immediate transfer to an outside hospital, stating "something inside [my] stomach [feels] as if it [is] about to bust or pop" and that he was "extremely sick, in pain, and could barely walk." (Id.). Nonetheless, defendant Kearney refused to provide medical care, told plaintiff that nothing was wrong, and instructed him to go eat dinner. (Id. at 10–11).[2] Shortly after this interaction, another inmate told plaintiff that he overhead defendant Kearney stating she wanted to hurt plaintiff because he "likes to file lawsuits." (Id. at 10).

That same day, as defendant's pain and other symptoms continued, he declared a medical emergency and called his family to tell them about the situation. (Id. at 11). Plaintiff's family then called E.C.I. to report their concerns about plaintiff. (Id.). Upon defendant Kearney's second evaluation in response to the medical emergency, she "gave plaintiff an injection for pain," ordered stool and blood tests, and spoke to his family members. (See id. at 11, 15; Suppl. Compl.

_____

the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

[2] By way of his supplemental complaint, plaintiff suggests that he first saw defendant Kearney earlier in the day on September 29, before she instructed him to go eat dinner, and that she refused to transfer plaintiff to the hospital also during this earlier visit. (DE 11-1 at 2–3). The court does not address this discrepancy as same is not required to rule on the instant motions.

3

(DE 11-1) at 3).   But she refused to send plaintiff to an outside hospital for further diagnosis or treatment.   (Compl. (DE 7) at 11–13).

Plaintiff also submitted an emergency grievance to prison officials that same day, explaining he was experiencing severe abdominal pain with associated swelling, and requesting transfer to an outside hospital.   (Id. at 13).   On October 2, 2023, plaintiff's lab results showed abnormal liver enzymes, but defendant Kearney "still delayed sending plaintiff to the hospital for treatment."   (Suppl. Compl. (DE 11-1) at 3).   Plaintiff was sent to the hospital October 5, 2023, where he was diagnosed with a blocked bile duct due to gallstones, liver damage, and inflammation of the gall bladder requiring removal.   (Compl. (DE 7) at 13–14; Suppl. Compl. (DE 11-1) at 4).   During the ensuing emergency surgery, plaintiff's gall bladder was removed and it "burst [open] right in the surgeon's hands."   (Compl. (DE 7) at 15).   Plaintiff lost his gallbladder, had stents placed in his bile duct, and suffered liver damage due to the gallstones.   (Id. at 19–20).

In the medical discharge summary from the hospital, the treating physician directed that plaintiff should return to the hospital in two weeks for removal of the stents placed in his bile duct. (Suppl. Compl. (DE 11-1) at 4).   Defendant Kearney, however, did not arrange for plaintiff to be transferred for this procedure for approximately 11 months, thereby causing risk of infection and other harm.   (Id. at 5–6).   Plaintiff also suffered anxiety and other mental distress as a result of this delay.   (See id. at 10, 14).   In addition, plaintiff's "wound" from the initial surgery now will need to be reopened to remove the stents, when that could have been avoided if plaintiff had been transferred to the hospital during the two-week period that the hospital providers directed.   (See id. at 11, 13).

4

**COURT'S DISCUSSION**

A.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.   In evaluating whether a claim is stated, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.      Analysis

Defendants argue as a threshold issue that the court erred in granting plaintiff leave to proceed in forma pauperis under the PLRA.   The PLRA bars inmates from proceeding in forma pauperis "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."   28 U.S.C. § 1915(g). This subsection is known as the "three-strikes" provision of the PLRA.   See Hall v. United States, 44 F.4th 218, 222–23 (4th Cir. 2022); Tolbert v. Stevenson, 635 F.3d 646, 650 (4th Cir. 2011).

---

[3]      Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Defendants rely upon the following cases to show plaintiff has struck out under the PLRA: 1) <u>Neal v. Champion</u>, No. 1:19-CV-1272 (M.D.N.C. Apr. 10, 2020 & Nov. 24, 2020); 2) <u>Neal v. State Employees Credit Union</u>, 2:19-CV-44-FL (E.D.N.C. May 8, 2020); and 3) <u>Neal v. Vaughn</u>, 5:22-CT-3222-BO (E.D.N.C. Dec. 5, 2023). But even assuming that the first two cases were dismissed on one of the required grounds, the third was not. In <u>Vaughn</u>, the court granted summary judgment to defendants upon concluding that plaintiff's claims were unsupported by the factual record developed at summary judgment. <u>See</u> Order, <u>Neal v. Vaughn</u>, 5:22-CT-3222-BO (E.D.N.C. Dec. 5, 2023) (ECF No. 5). While the court determined that plaintiff's medical records "unequivocally contradict the allegations in the complaint," that is not tantamount to a finding that the court dismissed the action as frivolous, malicious, or failed to state a claim on which relief may be granted. <u>See</u> <u>Blakely v. Wards</u>, 738 F.3d 607, 611–15 (4th Cir. 2013) (requiring dismissal order to "stat[e] on its face that the dismissed action was frivolous, malicious, or failure to state a claim for relief" and that the district court must "ring [those] PLRA bells" for dismissal to count as a strike).

In any event, the issue is now moot where plaintiff recently paid the filing fee in full. (<u>See</u> State Defs. Reply (DE 36)). Even if the court erred by allowing plaintiff to proceed in forma pauperis during the earlier stages of this case, the only remedy the court could order is to direct plaintiff to pay the filing fee by a date certain or risk dismissal of the action for failure to prosecute. <u>See</u> 28 U.S.C. § 1915(g); <u>see also</u> <u>Banks v. Hornack</u>, 698 F. App'x 731, 734 n.2 (4th Cir. 2017). Such an order cannot now be entered where plaintiff has paid the fee. Accordingly, and where this is the only ground upon which state defendants seek dismissal of the claims asserted against them, their motion is denied.

As noted above, defendant Kearney raises additional arguments in support of her motion to dismiss. First, defendant Kearney argues that plaintiff fails to allege sufficient facts to state a claim for deliberate indifference under the Eighth Amendment. Plaintiff's Eighth Amendment claim requires allegations showing that a prison official knew of and disregarded an objectively serious medical need or risk of harm. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer v. Brennan, 511 U.S. 825, 837 (1994). The plaintiff must allege the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). In addition, allegations of negligence or medical malpractice in diagnosis or treatment do not standing alone state an Eighth Amendment claim for deliberate indifference. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976).

Here, in the context of a potential medical emergency, the court must find that plaintiff has alleged sufficient facts to state a claim for deliberate indifference. Broadly construing plaintiff's pleadings, he alleges that defendant Kearney delayed sending him to the hospital for approximately six days even though plaintiff repeatedly informed her that he was suffering severe abdominal pain and swelling that was not improving, and that such delay continued for two days even though defendant Kearney was aware of abnormal lab results indicating a medical emergency. (See Compl. (DE 7) at 10–15; Suppl. Compl. (DE 11-1) at 3–4). And when plaintiff returned to the correctional facility following surgery, defendant Kearney did not comply with the instructions to return plaintiff to the outside hospital in two weeks to have the stents removed, resulting in increased risk of infection and other complications. (See Suppl. Compl. (DE 11-1) at 4–6, 10–

7

11, 13–14).    Delayed medical care such as the foregoing is sufficient to state a plausible Eighth

Amendment violation.    See Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022).    And the fact

that defendant Kearney provided some treatment during this timeframe does not mean that she

provided constitutionally adequate treatment.    See De'lonta v. Johnson, 708 F.3d 520, 526 (4th

Cir. 2013).

Defendant Kearney further argues that plaintiff fails to allege sufficient facts showing that

she was aware of the abnormal lab reading, or that she had authority to transfer him to the hospital.

But both of those facts are reasonable inferences based on the allegations that defendant Kearney

was the provider in charge of plaintiff care and that she ordered the lab work.    (See Compl. (DE

7) at 15; Suppl. Compl. (DE 11-1) at 3).

In sum, the court finds plaintiff alleges sufficient facts to state a claim for deliberate

indifference to serious medical care.    And with respect to defendant Kearney's assertion of

qualified immunity, in this context the inquiry is subsumed by the merits determination of whether

plaintiff alleges sufficient facts to state a claim for deliberate indifference.    See Pfaller v.

Amonette, 55 F.4th 436, 446–48 (4th Cir. 2022) ("But in some cases . . . the court need not

separately determine whether the constitutional right was clearly established if there remains a

genuine issue of material fact as to an official's deliberate indifference, because that potential

deliberate indifference would, if established, necessarily include an awareness of the illegality of

one's actions"); Thorpe v. Clarke, 37 F.4th 926, 938–40 (4th Cir. 2022).

Turning finally to plaintiff's state law claims, defendant Kearney argues that these claims

are barred by North Carolina Rule of Civil Procedure 9(j).    In order to proceed with a medical

malpractice action in North Carolina courts, Rule 9(j) requires the plaintiff to allege that a person

8

expected to qualify as an expert has reviewed the medical records and determined that the defendant did not comply with the standard of care. N.C. Gen. Stat. § 1A-1, Rule 9(j); Thigpen v. Ngo, 355 N.C. 198, 201–02 (2002).

Rule 9(j), however, is not applicable in federal court. See Berk v. Choy, 146 S. Ct. 546, 554 (2026) (rejecting attempt to apply similar Delaware rule to medical malpractice claim in federal court where "by specifying what information about the merits is required in the pleading, [Federal Rule of Civil Procedure 8] excludes the possibility of requiring even more information on the same topic"); Pledger v. Lynch, 5 F.4th 511, 523–24 (4th Cir. 2021) (holding similar West Virginia rule does not apply in federal court); see also Saylon v. United States, No. 5:20-CV-176-FL, 2021 WL 3160425, *34 (E.D.N.C. July 26, 2021) (concluding Pledger forecloses reliance on North Carolina Rule 9(j) in federal court and denying motion to dismiss to the extent it was based on failure to obtain pre-suit medical opinion). Accordingly, plaintiff's failure to include allegations required by North Carolina Rule 9(j) does not bar plaintiff's claims.

Defendant Kearney also points to the North Carolina Tort Claims Act as an alleged bar to the instant state law claims, and in particular a recent amendment that provides as follows:

> This Article provides the sole and exclusive remedy for any claim that arises as a result of the negligence of any officer, employee, involuntary servant, or agent of the State while acting within the scope of his office, employment, service, agency, or authority, and the North Carolina Industrial Commission is the sole and exclusive forum for hearing any such claims. Any such claims filed in any other forum arising out of or relating to the same subject matter against the officer, employee, involuntary servant, or agent of the State is precluded.

N.C. Gen. Stat. § 143-291(e). But other than citing the statute and suggesting that she is an employee or agent of the state, defendant Kearney provides no further analysis of this recent addition to the Tort Claims Act. Prior to enactment of subsection (e) in October 2023, the Act

9

operated as a waiver of sovereign immunity for negligence claims brought against North Carolina and constituent state agencies, but only to the extent such claims were filed in the North Carolina Industrial Commission. See Stewart v. North Carolina, 393 F.3d 484, 490 n.3 (4th Cir. 2005). Plaintiff provides no case law holding that subsection (e) precludes negligence claims brought in federal court against state officials in their individual capacities.[4]

At this preliminary stage, the court declines to address this issue based on the conclusory argument offered by defendant Kearney, but this decision is without prejudice to raise the issue at a later stage of the litigation. Any further assertion of defense under § 143-291(e) must be accompanied by argument and legal citation explaining how this subsection bars individual capacity negligence claims in federal court. Moreover, defendant Kearney must show that she qualifies as an officer, employee, or agent of North Carolina. See N.C. Gen. Stat. § 143-291(e).

The preceding discussion also raises the issue of whether plaintiff is pursuing official capacity claims in this action. The court does not construe the operative complaints to assert such claims. In any event, official capacity claims premised on the facts alleged here are barred by sovereign immunity and other pertinent law. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Kentucky v. Graham, 473 U.S. 159, 165–66 (1985); Board of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Stewart, 393 F.3d at 490–91.

In sum, the court denies defendants' motions to dismiss. The case will proceed to discovery as to all individual capacity claims asserted in the operative complaints.

---

[4]     Most district courts that have addressed the issue have determined that subsection (e) does not preclude individual capacity negligence claims in federal court. See Carias v. North Carolina Dep't of Pub. Safety, No. 1:24-CV-765 (RDA/JLW), 2025 WL 2404530, at *8 (M.D.N.C. Aug. 19, 2025) (collecting cases).

C.   Remaining Motions

Defendant Kearney and plaintiff's motions to strike are denied as moot in light of resolution of the motions to dismiss set forth herein.   Plaintiff is warned, however, that he is allowed one response to defendants' motions pursuant to this court's Local Civil Rules, and he is directed to cease filing additional responses after the first one, including substantive responses incorrectly labeled as motions to strike.

Plaintiff's motion to appoint medical expert to assist the court pursuant to Federal Rule of Evidence 706(a) is denied at this juncture, where discovery has not occurred and there is no showing of good cause for such appointment.   As to plaintiff's requests for judicial notice of medical records in this same motion, there is no need for such notice in the current procedural posture.   If plaintiff wishes to rely on his medical records to support his claims in this case, he should request them from defendants during the forthcoming discovery stage of the litigation.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE 20, 24), defendant Kearney and plaintiff's motions to strike (DE 37, 43), and plaintiff's motion to appoint expert (DE 39) are DENIED.   The clerk shall issue initial scheduling order after defendants file their answers.

SO ORDERED, this the 25th day of March, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

11